## CHARLIE HAVILL v. STATE.

No. A-779. Opinion Filed March 5, 1912.

(121 Pac. 794.)

1. **TRIAL—Instructions—Credibility of Witnesses.** (a) It is error for a trial court to instruct the jury that they are bound to accept as true the testimony of a witness who they believe has testified falsely on any material matter, when such witness is corroborated by other credible testimony.

   (b) Under the provisions of section 6857, Comp. Laws 1909, the jurors are made the exclusive judges of all questions of fact.

2. **TRIAL—Province of Court and Jury.** Trial courts cannot legally indicate their opinion, either expressly or impliedly, intentionally or otherwise, as to the credibility of any witness, or as to the truth of any fact in issue. The whole matter of finding as to the facts of the case must be left entirely to the jury, without suggestions or leadings by the court.

3. **APPEAL—Review—Presumptions.** (a) Under subdivision 6, sec. 6823, Comp. Laws 1909, all instructions given to a jury by a trial court must be in writing, unless waived by both parties; and such instructions must be filed and become part of the record.

   (b) When the circumstances disclosed by the record indicate that the court gave oral instructions which were reduced to writing and made a part of the record, in the absence of showing to the contrary, it will be presumed that the instructions were written out and given to the jury before they retired to deliberate.

(Syllabus by the Court.)

*Appeal from District Court, Cleveland County;*
*R. McMillan, Judge.*

Charlie Havill was convicted of maiming, and appeals. Reversed and remanded.

*B. F. Wolf, Ralph C. Hardie,* and *J. B. Dudley,* for plaintiff in error.

*Smith C. Matson,* Asst. Atty. Gen., for the State.

ARMSTRONG, J.  Plaintiff in error, Charlie Havill, was convicted on the 20th day of January, 1910, in the district court of Cleveland county on a charge of maiming, and his punishment fixed at two and one-half years in the state penitentiary.

On the 12th of September, 1909, about sundown, J. Vandiveer, who is the prosecuting witness, and the accused became engaged in a personal encounter on the main street of the city of Norman.  During the fight, it is charged that the prosecuting witness had a portion of one ear bitten off by accused.  At the time of the difficulty, the prosecuting witness was engaged in conversation with one O'Haver, who was sitting in a buggy, when the accused came down the street, walked up to the buggy, and made some remark, following which words passed back and forth. It is contended that the prosecuting witness knocked the accused down, and he immediately arose and started toward said witness, when they clinched and fell to the ground, prosecuting witness falling on top.  During the struggle that ensued, prosecuting witness lost the piece of ear.  There is a sharp conflict in the testimony as to who was the real aggressor.

The accused, for reversal of this cause, relies on errors in the instructions of the court.  The first assignment is based upon the following portion of instruction No. 11 of the court's charge:

"If you shall find that there is a conflict in the testimony, reconcile that conflict, if you can, so as to let all the testimony stand; but, if you cannot so reconcile it, it is within your province and power to disregard the testimony of any witness whom you believe has testified falsely on any material matter, further than you believe that the same is corroborated by other credible testimony."

This particular instruction has been condemned by this court in a number of cases, and the error therein clearly pointed out. The objection to the instruction is that it invades the province of the jury and binds them to believe the corroborated portion of a witness' testimony, although the jury may not, in fact, believe any of it. We are satisfied that the court did not intend to bind the jury in this manner; but such is the effect of the instruction, nevertheless. This court would not feel called upon to reverse every case in which this instruction is given; but in a close case, where the testimony is sharply conflicting, and it is reasonably probable that injury resulted from the giving of such instruction, we think it is sufficient to call for a reversal.

Section 6857, Comp. Laws 1909, provides, among other things, that the court must instruct the jury that they are the exclusive judges of all questions of fact. This being so, it is for the jury to say whether they will believe any portion of a witness' testimony, be it corroborated or not. The Legislature had the right to enact this statute, and did so, and the courts should carefully refrain from interfering with the prerogatives of the jury.

In *Rea v. State,* 3 Okla. Cr. 269, 105 Pac. 381, an instruction identical in principle was condemned by this court in the following language, after citing the statute, *supra*:

"The latter part of the instruction given flatly contradicts this statute by directing the jury, in mandatory terms, to accept and be bound by certain evidence, under the contingency therein stated. The court had no right to ingraft this exception upon the law. The doctrine expressed by the Supreme Court of Kansas is in harmony with out statute. It matters not how anxious this court may be to enforce the law, we cannot allow a conviction to stand which is based upon a violation of plain and mandatory statutes which go to the foundation of the case, and which action deprived the defendant of substantial rights upon the trial. The law is plain and simple, and must be followed in all matters involving the substantial rights of a defendant."

See, also, *Shellabarger v. Nafus,* 15 Kan. 554.

The trend of modern action, both legislative and judicial, is to watch over and protect very jealously the legitimate powers

of the jury, and to prevent the court from overstepping the line which separates law from fact. Trial judges cannot legally indicate their opinion, either expressly or impliedly, intentionally or otherwise, as to the credibility of the witnesses, or as to the truth of any fact in issue, or the subject of the evidence. They may declare the law fully and freely; but whether a certain contested fact has been proved is entirely for the jury, which involves both the credibility of the witness and the existence of the fact, whether said fact depends upon direct and positive testimony, or upon inferences to be drawn from other proved facts. In fine, the whole matter of finding the facts of the case must be left entirely to the jury, without suggestion or leadings by the court. See 11 Ency. Pleading and Practice, pp. 101 and 102.

The instruction under consideration is contrary to the explicit provisions of the statute. The court cannot legitimately go further than to instruct the jury that, if they believe from the evidence that any witness has willfully and corruptly sworn falsely as to any material fact, they may disregard the whole of such testimony, or any part of it which they deem false. Clearness and accuracy in instructions are of prime importance; and while the trial court in all probability did not intend to say to the jury that they were bound to believe the testimony of any witness, whether corroborated or not, yet such is the plain interpretation of the instruction, or else it is ambiguous.

Counsel for the accused in their next assignment complain of the action of the court in giving oral instructions to the jury. After the case had been submitted to the jury, it returned into court for further instructions; whereupon the following proceedings were had, upon which this assignment is based:

"The Court: Mr. Jurymen, what is the trouble? A Juror: Why, I want to know what mayhem is, or if it could be committed if two parties were fighting—just got into a quarrel—and if one was to make a blow or destroy a member with his fist, or with any other means, without just taking hold of it with his mouth and destroying that member. Would that be mayhem? The Court: Whether he could commit it with a blow or not? A Juror: No; if he was to destroy this member sim-

ply to come out victorious in the fight. The Court: If he was to sever a member or cut it off, it would be mayhem. A Juror: By a blow? The Court: By any method in the world. A Juror: If two men was to meet and mutually agree to have a fight—both parties mutually agree—and they both stood on their feet and struck in a pugilistic-like manner, and one would destroy a member of the other, would that be mayhem? The Court: If he cut a member off, it would be mayhem. A Juror: Can a man commit an assault by words or actions without ever striking a blow, without hitting? The Court: He can't. He has got to commit some overt act. A Juror: He has got to actually hit first? The Court: No; he don't have to come in contact with the body; but he has got to make an effort to do so. A Juror: If he was to use profane language, progressing towards the other party, would that be an assault—threatening language? The Court: If a man advances on another using profane language, leading the other to believe at the time that he is going to assault him, he has a right to treat it as an assault."

This colloquy between the court and the juror was transcribed by the stenographer, and is incorporated in the record as instruction No. 12. We are not able to determine whether it was given to the jury when they retired from the courtroom or not; but, in the absence of showing to the contrary, the presumption is that it was.

Counsel for the accused contend that the discourse between the court and the jury, given at a time and in the manner it was, was prejudicial to his rights, and apparently base that contention on subdivision 6, sec. 6823, Comp. Laws 1909, which is as follows:

"All instructions given shall be in writing, unless waived by both parties, and shall be filed and become a part of the record in the case."

This provision seems to have been complied with. There is no contention that any proposition of law given to the jury in this connection was incorrect, and without such issue having been raised we decline to discuss that feature. Counsel cite a number of authorities on the proposition that the instruction should have been written out and given to the jury; but, as we have said, in the absence of showing to the contrary, we presume this was done. The court has no right to give oral instructions under our

statute, unless by consent of both parties; and in overruling this assignment we do not lay down a contrary doctrine, but base our ruling solely upon the theory that the instructions were transcribed and filed as part of the record in the manner required by law.

There are other assignments brought, all of which involve questions which the decisions of this court have heretofore settled, and on account of the press of business we do not feel that time should be consumed in discussing them again in this opinion.

Let the judgment be reversed, and the cause remanded for a new trial.

FURMAN, P. J., and DOYLE, J., concur.