718 P.2d 247 (1986)
Thomas E. McFARLAN, Petitioner,
v.
The DISTRICT COURT In and For the FOURTH JUDICIAL DISTRICT, and the Honorable Matt M. Railey, One of the Judges Thereof, Respondents.
No. 85SA304.
Supreme Court of Colorado, En Banc.
May 5, 1986.
*248 Larry Pozner & Associates, P.C., Shelley Gilman, Denver, for petitioner.
Clifford R. Cronk, III, Sp. Deputy Dist. Atty. for Fourth Judicial Dist., Denver, for respondents.
KIRSHBAUM, Justice.
In this original proceeding, the petitioner, Thomas E. McFarlan, seeks review of a trial court order denying his motion for disqualification of the district attorney and his staff, including a special deputy district attorney, and for appointment of a special prosecutor. We issued a rule to show cause why the petitioner's motion should not be granted. We now discharge the rule.
The relevant facts are not in dispute.[1] On August 30, 1984, the El Paso County, Colorado, Grand Jury returned a multiple-count indictment charging twenty-three named individuals with numerous drug-related offenses under the Colorado Criminal Code and the Colorado Controlled Substances Act. The case against those twenty-three individuals was presented to the grand jury by the then district attorney for the Fourth Judicial District, Robert Russel, and his deputies. At that time, Clifford R. Cronk was one such deputy district attorney and had been active in the investigation which led to the indictment in this case. Prior to the return of the indictment, Cronk left his employment with the district attorney's office and secured a position as an assistant attorney general for the State of Colorado. However, because of Cronk's familiarity with this case, Russel designated Cronk as a special deputy district attorney to enable Cronk to continue as prosecutor and primary trial deputy in this case.
Two of the twenty-three indicted were the petitioner and Loran David Simmons. The petitioner, Simmons and several others were charged as co-defendants with counts of possession of more than eight ounces of marijuana, possession of marijuana with intent to dispense, conspiracy to commit possession and distribution of marijuana, and two special offender counts. Prior to return of the indictment, Simmons retained attorney Frank Simons to represent him in connection with the grand jury investigation and on the charges subsequently brought against Simmons. Simons was at that time a law partner with Barney Iuppa in the law firm of Simons and Iuppa. At the time Simmons retained Simons, Iuppa was campaigning for the office of District Attorney for the Fourth Judicial District. Iuppa was elected to this position in November of 1984, and took office in January of 1985. Upon taking office, Iuppa redesignated Cronk as a special deputy district attorney in this case.
On May 10, 1985, Cronk filed a motion to dismiss the charges against Simmons; the grounds stated for this motion were "to avoid conflict of interest." At the hearing on this motion, Cronk stated: "we're attempting to avoid a conflict of interest with relation to Mr. Simons and Mr. Iuppa who were partners prior to Mr. Iuppa being elected District Attorney and at a time *249 when they were both defense attorneys representing Mr. Simmons." The trial court granted this motion. Subsequently, the petitioner filed the disqualification motion which is the subject of this original proceeding.
Thereafter, the prosecution filed a motion to appoint a special prosecutor to review the propriety of the dismissal of charges against Simmons, to determine whether or not the charges against Simmons should be refiled and, in the event the charges were refiled and accepted by the court, for the special prosecutor to conduct the prosecution against Simmons. The trial court granted this motion on June 20, 1985. On the next day, a hearing was held on the petitioner's disqualification motion. The petitioner's motion was denied.
The petitioner contends that the district attorney and his staff, including Cronk, should be disqualified from prosecuting this case because the representation of Simmons by Iuppa's former firm, coupled with the voluntary dismissal of charges against Simmons, creates an appearance of impropriety. We disagree.
Canon 9 of the Code of Professional Responsibility (the Code)[2] provides that "A Lawyer Should Avoid Even the Appearance of Professional Impropriety." Requiring attorneys to conduct themselves in ways which avoid the appearance of impropriety promotes public confidence in the integrity and efficiency of the legal system and the legal profession. See EC9-1, 9-2. We have recognized that the appearance of impropriety standard of Canon 9 is applicable to the question of whether an attorney must be prohibited from participating as a prosecutor in criminal litigation. Cleary v. District Court, 704 P.2d 866 (Colo.1985); Osborn v. District Court, 619 P.2d 41 (Colo.1980).
The determination of whether a district attorney should be disqualified from prosecuting a particular case is committed to the sound discretion of the trial court. Cleary, 704 P.2d 866; People v. Garcia, 698 P.2d 801 (Colo.1985). Thus, a trial court must review the particular facts of each case in determining whether there exists a reasonable appearance of impropriety warranting disqualification. Osborn, 619 P.2d 41. However, when considering the appropriate resolution of issues arising under Canon 9 of the Code in disqualification proceedings, courts must be mindful "`not to accept the view of the most cynical as the true voice of the public....'" Garcia, 698 P.2d at 806 (quoting International Electronics Corp. v. Flanzer, 527 F.2d 1288, 1294 (2d Cir.1975)).
The petitioner first argues that fundamental fairness requires the appointment of a special prosecutor because there is a potential for prosecutorial use against him of confidences which Simmons may have shared with the Simons and Iuppa firm. He asserts that Simmons must be presumed to have reposed confidences in his attorney, Simons; that such confidences must be imputed to Iuppa; and that Iuppa could now improperly use those confidences against the petitioner.
Canon 4 of the Code provides that "A Lawyer Should Preserve the Confidences and Secrets of a Client." DR4-101(B)(2) and (3), specific standards of conduct imposed on attorneys to ensure adherence to the axiomatic norm of Canon 4, provide that, except in certain limited circumstances:
a lawyer shall not knowingly:

....
(2) Use a confidence or secret of his client to the disadvantage of the client.
(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.
*250 Canon 4 and its corresponding disciplinary rule serve the salutary purposes of facilitating full development of the facts essential to proper and efficient representation of a client and encouraging lay persons to seek legal assistance unhindered by fear of possible disclosure of confidences. See EC4-1; ABA Comm. on Professional Ethics and Grievances, Formal Op. 250 (1943). To the extent an attorney is permitted to utilize information obtained in the course of representing a client against that client in any proceeding, the central feature of the attorney-client relationship is severely undermined. For this reason, courts have vigorously protected confidential attorney-client communications by prohibiting attorneys from taking advantage of such information to the detriment of the former client. See T.C. Theatre Corp. v. Warner Bros. Pictures, 113 F.Supp. 265 (S.D.N.Y. 1953); Osborn, 619 P.2d 41; cf. Allen v. District Court, 184 Colo. 202, 519 P.2d 351 (1974). See generally Developments in the LawConflicts of Interest in the Legal Profession, 94 Harv.L.Rev. 1244, 1315 (1981).
In spite of these concerns, the majority of courts considering the question of whether a prosecuting attorney must be prohibited from prosecuting an accused because of a prior attorney-client relationship between the prosecutor and a co-defendant of the accused have concluded that in this circumstance disqualification is not automatically warranted. See Fare v. Charles Willie L., 63 Cal.App.3d 760, 132 Cal.Rptr. 840 (1976); Walker v. State, 401 N.E.2d 795 (Ind.Ct.App.1980); Martin v. Commonwealth, 361 S.W.2d 654 (Ky.1962), cert. denied, 371 U.S. 969, 83 S.Ct. 553, 9 L.Ed.2d 540 (1963); State v. Pearson, 296 So.2d 316 (La.1974); Clark v. State, 409 So.2d 1325 (Miss.1982); Thoreson v. State, 69 Okla.Crim. 128, 100 P.2d 896 (1940). But see Banton v. State, 475 N.E.2d 1160 (Ind.Ct.App.1985). No single standard is available to determine when a prosecutor must be disqualified from prosecuting a defendant because of the prosecutor's prior association with the representation of a co-defendant, and each case in which this issue arises requires careful analysis of all relevant circumstances. See Osborn, 619 P.2d 41. Two factors are of particular significance, however: (1) the presence or absence of a prior direct attorney-client relationship between the defendant seeking disqualification and the prosecuting attorney, Fare, 63 Cal.App.3d 760, 132 Cal.Rptr. 840; Martin, 361 S.W.2d 654; Clark, 409 So.2d 1325; and (2) the presence or absence of evidence that the prosecuting attorney actually received confidential information from or about the complaining defendant. Fare, 63 Cal.App.3d 760, 132 Cal.Rptr. 840; Thoreson, 69 Okla.Crim. 128, 100 P.2d 896; cf. Banton, 475 N.E.2d 1160 (in post-conviction challenge, particular circumstances of case reveal that prosecution knew details of defendant's case because of prosecutor's previous representation of a co-defendant).
Although the cases do not yield a uniform rationale for their relatively uniform result, they do establish the principle that the mere fact of prior representation of a co-defendant does not permit any presumption that information about the present defendant was communicated. In the instant case, the petitioner did not at any time enter into an attorney-client relationship with the Simons and Iuppa firm. Furthermore, the petitioner does not assert that Simons or Iuppa ever received confidential information from or about the petitioner during the time Iuppa was a member of the firm.[3]
*251 The petitioner argues that under our decision in Osborn, 619 P.2d 41, he is entitled to benefit from a presumption that confidential information was disclosed by Simmons to his attorney, Simons. This argument is without merit. In People ex rel. Farina v. District Court, a case consolidated with Osborn v. District Court, 619 P.2d 41 (Colo.1982), the prosecuting attorney who was the object of the defendant's disqualification motion had represented the defendant in another criminal case some thirteen years prior to the commencement of the criminal action in which the disqualification motion was filed. We noted that confidences must be presumed to have been reposed between the client and the attorney in regard to information about the client; indeed, in Farina, the defendant/former client alleged that he had made confidential statements to his former attorney. In this case, there is no basis to presume that Simmons disclosed confidential information about the petitioner to Simons. Recognition of such a presumption would permit any defendant to seek disqualification of any prosecutor who had formerly represented a co-defendant or who had been a member of a private law firm that formerly represented a co-defendant on the basis of pure speculation. We conclude that an accused seeking to disqualify a prosecutor because of prior representation of a co-defendant by a member of the prosecutor's former law firm must show that either the prosecutor or the firm member, by virtue of the prior professional relationship with the co-defendant, received confidential information about the accused which was substantially related to the pending criminal action. See Wilson P. Abraham Construction Corp. v. Armco Steel Corp., 559 F.2d 250 (5th Cir.1977); Fare, 63 Cal.App.3d 760, 132 Cal.Rptr. 840; Thoreson, 69 Okla.Crim. 128, 100 P.2d 896. No allegation of such disclosure of confidential information about the accused has been made in this case.
The petitioner also contends that the prosecution's conduct in dismissing the charges against Simmons on the basis of avoidance of a conflict of interest creates an appearance of preferential treatment towards Simmons and undermines public trust in the integrity of the judicial process. We do not agree.
A district attorney has broad discretion in determining what criminal charges should be prosecuted and in requesting dismissal of pending charges. Sandoval v. Farish, 675 P.2d 300 (Colo.1984); People v. District Court, 632 P.2d 1022 (Colo.1981). Here, the prosecution's motion to dismiss the charges against Simmons was granted by the respondent trial court pursuant to Crim.P. 48 with the express caveat that the granting of the motion was without "any ruling on whether there is any effect as to anybody else in the case." The petitioner does not question the propriety of this ruling. Moreover, the district attorney subsequently sought and obtained appointment of a special prosecutor to review the dismissal of the charges against Simmons and to prosecute him separately should the charges be reinstated.[4] These factors strongly militate against any conclusion that the conduct of the district attorney's office in requesting dismissal of the charges against Simmons requires its withdrawal from participation in the prosecution of the petitioner's case.
While the trial court here noted that the better practice would have been for Iuppa, upon assuming office, to have withdrawn from this case and to have requested appointment of a special prosecutor, it determined that any appearance of impropriety with regard to the conduct of Iuppa and his office was not, under the circumstances, sufficient to require disqualification. We conclude that the trial court did not abuse its discretion in refusing to disqualify the district attorney and his staff under Canon 9 in the circumstances of this case.
The rule is discharged.
LOHR, J., does not participate.
NOTES
[1] The record in this case comprises copies of various pertinent motions and briefs relating thereto, the indictment, and transcripts of the hearings on the motion to dismiss and the motion to disqualify the district attorney's office. The respondents have attached to their response to order to show cause the affidavits of Frank S. Simons and Barney Iuppa, dated September 18, 1985, and October 2, 1985, respectively. Those affidavits were not submitted to the respondent trial court by the time of its ruling on the motion to disqualify the district attorney's office and will not be considered in this original proceeding. See Panos Investment Co. v. District Court, 662 P.2d 180 (Colo.1983).
[2] Although the Code is designed as a body of standards for regulation of the legal profession and as a basis for governing professional disciplinary action, reference to the Code's Canons, Disciplinary Rules (DR), and Ethical Considerations (EC), is helpful when questions concerning attorney disqualification are presented.
[3] The respondent trial court correctly noted that Iuppa, when he was a law partner of Simons, would be found to have imputed knowledge of the confidence reposed in Simons by Simmons during their attorney-client relationship. See DR5-105(D); Allen v. District Court, 184 Colo. 202, 519 P.2d 351 (1974). Thus, Iuppa could not ethically prosecute Simmons on the charges upon which Simons represented Simmons without doing great violence to the standards of professional conduct required of an attorney by Canon 4 and the disciplinary rule thereunder. See Osborn v. District Court, 619 P.2d 41 (Colo. 1980). The case before us now, however, involves the prosecution of a co-defendant of the former client of the district attorney, not prosecution of the former client.
[4] The record does not indicate the results of the special prosecutor's review of the dismissal of charges against Simmons or whether those charges have been refiled.